1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

17

| | |
|---|---|
| MICHAEL ALLEN STERNI, ) | No. C 12-5145 RMW (PR) |
| ) | |
| Plaintiff, ) | ORDER GRANTING |
| ) | DEFENDANT'S MOTION FOR |
| vs. ) | SUMMARY JUDGMENT |
| ) | |
| UNIT SUPERVISOR LEPAGE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff, a state pretrial detainee proceeding pro se, brought the instant civil rights complaint

pursuant to 42 U.S.C. § 1983, alleging that defendant Unit Supervisor LePage violated his

Fourth Amendment right against unreasonable searches and seizures by forcibly withdrawing

plaintiff's blood without consent. Finding that the complaint, liberally construed, stated a

cognizable claim, the court ordered service upon defendant. Defendant has moved for summary

judgment.[1] Although given an opportunity, plaintiff has not filed an opposition.[2]

18

19

20

21

22

23

24

[1] Defendant's amended motion to seal is GRANTED.

25

26

[2] The court notes that not long after defendant served his motion for summary judgment
and related papers on plaintiff, plaintiff filed a notice of change of address on December 20,
2013. (Docket Nos. 22, 24.) Thereafter, on December 30, 2013, defendant served a Rand
warning on plaintiff to plaintiff's updated address notifying plaintiff that a motion for summary
judgment had been filed, and advising plaintiff of the requirements to oppose summary

27

28

1    For the reasons stated below, after a review of the record, the court concludes that

2    plaintiff has not demonstrated sufficient evidence to preclude summary judgment.  Accordingly,

3    the court GRANTS defendant's motion for summary judgment.

4                                    **BACKGROUND**[3]

5           The entirety of plaintiff's claim is that defendant forced plaintiff to submit to a blood

6    draw against plaintiff's beliefs when defendant knew or should have known that plaintiff was

7    leaving Napa State Hospital ("NSH") for county jail.  Plaintiff believed that if he fought against

8    having his blood drawn, plaintiff would be overmedicated and strapped down in five point

9    restraints.

10          On September 2, 2011, plaintiff was charged with the crime of attempting to remove a

11   firearm from a police officer, obstruction of a police officer, and battery on a police officer.

12   (Tierney Decl. ¶ 4.)  On December 20, 2011, plaintiff was judged mentally incompetent to stand

13   trial and mentally incompetent to refuse antipsychotic medications as part of treatment.  (Id.;

14   Unbates Numbered Docs., Part 2 at 441-45.)  The San Joaquin County Superior Court also found

15   that, without treatment, plaintiff would likely suffer physical or mental harm, and that plaintiff

16   was a danger to others as a result of his mental disorder.  (Id. at 443, 445.)  The Superior Court

17   ordered plaintiff to be involuntarily medicated as prescribed by a treating psychiatrist.  (Tierney

18   Decl. ¶¶ 3-4.)

19          Plaintiff was admitted to NSH on February 1, 2012.  (Id. ¶¶ 3, 6.)  Generally, plaintiff

20   was uncooperative with receiving his medication, but otherwise had no behavior problems.  (Id.

21   ¶¶ 7-8.)  However, on March 8, 2012, plaintiff assaulted Dr. Jacques, plaintiff's treating

22   _____

23   judgment.  See Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc).  Even if plaintiff did
     not receive defendant's motion for summary judgment prior to transferring to a different
24   institution, at the very least, plaintiff was given notice that a motion for summary judgment was
     filed when defendant notified him via the Rand warning.  There is no indication that plaintiff did
25   not receive either the motion or the Rand warning, and plaintiff has not communicated with the
26   court since filing his change of address in December 2013.

27          [3] The following facts are taken in the light most favorable to plaintiff and are undisputed
28   unless otherwise indicated.

Order Granting Defendant's Motion for Summary Judgment
P:\PRO-SE\RMW\CR.12\Sterni145msjgrant.wpd

1    psychiatrist, during a routine interview, which led Dr. Jacques to be hospitalized.  (<u>Id.</u> ¶ 9.)  As a

2    result, plaintiff was placed into seclusion and had to submit to five-point restraints.  (<u>Id.</u>)

3    Thereafter, plaintiff was placed in walking restraints until he could be discharged as competent

4    to stand trial.  (<u>Id.</u>)  Dr. Punia replaced Dr. Jacques as plaintiff's treating psychiatrist.  (<u>Id.</u>)

5      On March 12, 2012, Dr. Punia directed defendant to have plaintiff's blood drawn in order

6    to determine the level of the psychotropic medication called Depakote in plaintiff's blood, and

7    also to check plaintiff's liver function.  (<u>Id.</u> ¶ 11.)  Defendant is "blood certified," meaning that

8    he is certified to perform blood draws.  (LePage Decl. ¶ 1.)  When defendant approached

9    plaintiff for the blood draw, plaintiff stated that it was "against his beliefs" to submit to a blood

10    draw because he did not like for his blood to be taken.  (<u>Id.</u> ¶ 6.)  Ultimately, plaintiff allowed

11    defendant to draw his blood.  (<u>Id.</u>)  Thereafter, defendant submitted plaintiff's blood sample to

12    the lab to test for toxicity levels.  (<u>Id.</u>)

13      Plaintiff was discharged back to court as competent to stand trial on March 16, 2012.

14    (Unbates Numbered Docs. at 13.)

15                  **DISCUSSION**

16    **A.**    <u>**Standard of Review**</u>

17      Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

18    that there is "no genuine issue as to any material fact and that the moving party is entitled to

19    judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect

20    the outcome of the case.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute

21    as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

22    verdict for the nonmoving party.  <u>Id.</u>

23      The party moving for summary judgment bears the initial burden of identifying those

24    portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

25    issue of material fact.  <u>Celotex Corp. v. Cattrett</u>, 477 U.S. 317, 323 (1986).  Where the moving

26    party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

27    reasonable trier of fact could find other than for the moving party.  But on an issue for which the

28

opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." Liberty Lobby, Inc., 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. Id. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

**B.**   **Analysis**

Plaintiff claims that defendant violated his Fourth Amendment right against unreasonable searches and seizures when defendant forced plaintiff to submit to a blood draw. Defendant responds that because the blood draw was reasonable, plaintiff's constitutional right was not violated and defendant is entitled to judgment on the merits. Defendant further argues that he is entitled to qualified immunity.

Non-consensual extraction of blood implicates the Fourth Amendment's protection against unreasonable searches and seizures. See Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 616 (1989); Schmerber v. California, 384 U.S. 757, 766-72 (1966). "The touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." Haskell v. Harris, 669 F.3d 1049, 1053 (9th Cir. 2012) (internal quotation marks and citation omitted). "We apply the "totality of the circumstances" balancing test to determine whether a warrantless search is reasonable." Id. at 1053-54. Under this balancing test, "[w]hether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an

1   individual's privacy, and on the other, the degree to which it is needed for the promotion of

2   legitimate governmental interests."  Samson v. California, 547 U.S. 843, 848 (2006).

3        Here, defendant submits evidence that pursuant to a court order, plaintiff was

4   involuntarily hospitalized and directed to take antipsychotic medication so that he could be

5   competent to stand trial.  One of the medications that plaintiff had been receiving was Depakote,

6   which contains valproic acid.  (Tierney Decl. ¶ 12.)  Blood levels in patients who use valproic

7   acid should be monitored to test for toxicity.  (Id.)  Liver function test analysis is also standard

8   and is to be conducted periodically because hepatotoxicity can occur in the early stages of

9   treatment, and if not monitored, could be fatal.  (Id.)  Because plaintiff was taking Depakote,

10  defendant was instructed to draw plaintiff's blood for the purpose of testing the level of toxicity

11  in plaintiff's blood.  (Id. ¶¶ 11-14.)

12       As a felony pretrial arrestee, plaintiff has a significantly diminished expectation of

13  privacy.  Haskell, 669 F.3d at 1058.  Moreover, the means of the search, i.e., the blood draw, was

14  reasonable.  "The blood test procedure has become routine in our everyday life.  It is a ritual for

15  those going into military service as well as those applying for marriage licenses.  Many colleges

16  require such tests before permitting entrance and literally millions of us have voluntarily gone

17  through the same, though a longer, routine in becoming blood donors."  Schmerber, 384 U.S. at

18  771 n.13 (internal quotation marks and citation omitted); see also Skinner, 489 U.S. at 616 ("[I]t

19  is obvious that this physical intrusion, penetrating beneath the skin, infringes an expectation of

20  privacy that society is prepared to recognize as reasonable.").  Unlike the pretrial detainees in

21  both Schmerber and Skinner, however, plaintiff appears to only contest the fact of the

22  nonconsensual physical intrusion of the blood draw, and not the data gleaned from the taking of

23  the sample itself.  Thus, in light of the absence of evidence of abuse, the rather routine procedure

24  with which a taking of a blood sample is generally viewed, and the limited purpose for which the

25  blood sample was drawn, this nonconsensual blood draw does not appear to significantly intrude

26  on plaintiff's privacy.

27       On the other hand, the degree to which the blood draw was needed greatly furthers

28

1   legitimate governmental interests.  The record demonstrates that the blood draw was necessary to

2   ensure compliance with the San Joaquin Superior Court's order to forcibly medicate plaintiff so

3   that he would be competent to stand trial.  Notably, plaintiff did not raise a cognizable claim that

4   his constitutional rights were violated by administration of forced medication.  Thus, this court

5   will not reassess the propriety of the state court's decision to forcibly medicate plaintiff.

6   Importantly, defendant also argues that the state has an interest in being free from suit.  That is,

7   had defendant not conducted a blood draw in order to monitor plaintiff's toxicity levels from the

8   medication, the state potentially would be subject to an Eighth Amendment violation for

9   deliberate indifference to plaintiff's serious medical needs, or, at the very least, medical

10  negligence.

11          Accordingly weighing plaintiff's diminished privacy interests; the de minimis nature of

12  the physical intrusion entailed in the taking of a blood sample; the limited purpose for which

13  plaintiff's blood was drawn; and the governmental interest in remaining free from suit, the court

14  finds that the balance of interests tilts strongly in favor of finding that, based on the undisputed

15  facts in the record, defendant did not violate plaintiff's Fourth Amendment right against

16  unreasonable searches.

17          Alternatively, the court notes that case law does not clearly define whether this case

18  should be viewed under general Fourth Amendment principles of reasonableness, as discussed

19  above, or under the "special needs" exception to a warrantless search.  "The "special needs"

20  doctrine, which has been used to uphold certain suspicionless searches performed for reasons

21  unrelated to law enforcement, is an exception to the general rule that a search must be based on

22  individualized suspicion of wrongdoing."  City of Indianapolis v. Edmond, 531 U.S 32, 54

23  (2000).  In these cases, searches will be upheld if they are reasonable and "conducted for

24  important non-law enforcement purposes in contexts where adherence to the

25  warrant-and-probable cause requirement would be impracticable."  United States v. Kincade,

26  379 F.3d 813, 823 (9th Cir. 2004).  "Determining the reasonableness of any search involves a

27  twofold inquiry: first, one must consider whether  the . . . action was justified at its inception;

28  second, one must determine whether the search as actually conducted was reasonably related in

1    scope to the circumstances which justified the interference in the first place." <u>New Jersey v.</u>

2    <u>TLO</u>, 469 U.S. 325, 341 (1985) (internal quotation marks and citation omitted).

3          "The Supreme Court has held that warrantless blood and urine tests for the purpose of

4    detecting drug use are reasonable and therefore constitutionally permissible when justified by

5    "special needs" beyond a generalized law enforcement purpose." <u>Anthony v. City of New York</u>,

6    339 F.3d 129, 142 (2d Cir. 2003) (citing <u>Skinner</u>, 489 U.S. at 619-20).  In <u>Anthony</u>, blood and

7    urine tests were performed on a mentally disabled woman who was transported to the hospital by

8    police officers.  <u>Id.</u> at 141.  Hospital staff determined the individual to be unresponsive,

9    delusional, and paranoid.  <u>Id.</u> at 142.  As a result, the hospital took blood and urine samples, and

10   administered antipsychotic medications and drug tests.  <u>Id.</u> at 141.  The Second Circuit found the

11   tests to be constitutional and determined that "the blood and urine tests were not conducted for

12   any law enforcement purpose, but rather were undertaken to facilitate Anthony's diagnosis and

13   treatment by ruling out drug use or other physiological conditions as a possible explanation for

14   her delusional behavior."  <u>Id.</u> at 142.

15         Similarly here, plaintiff's blood draw was not taken for purposes of law enforcement.

16   The blood draw was necessary to ensure that the medication being administered to plaintiff as

17   directed by the San Joaquin Superior Court was being performed safely.  The "special needs"

18   exception generally "involve searches conducted for important non-law enforcement purposes in

19   contexts where adherence to the warrant-and-probable cause requirement would be

20   impracticable." <u>Kincade</u>, 379 F.3d at 823 (citing examples of cases in which the "special needs"

21   exception was recognized).  Plaintiff's case appears to fall squarely within that exception.

22   Applying the reasonableness test as given by the Supreme Court in <u>TLO</u>, here, the blood draw

23   was justified at its inception.  Defendant was directed to draw plaintiff's blood for the purposes

24   of monitoring plaintiff's blood level for toxicity due to the antipsychotic medications plaintiff

25   was taking.  Also, the search was a minimal intrusion and standard medical practice to be

26   administered to patients who are taking the type of antipsychotic drugs as plaintiff was.

27         Defendant also argues that he is entitled to qualified immunity.  .  The defense of

28   qualified immunity protects "government officials . . . from liability for civil damages insofar as

1   their conduct does not violate clearly established statutory or constitutional rights of which a

2   reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A

3   court considering a claim of qualified immunity must determine: (1) whether the plaintiff has

4   alleged the deprivation of an actual constitutional right, and (2) whether such right was clearly

5   established such that it would be clear to a reasonable officer that his conduct was unlawful in

6   the situation he confronted.  See Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).  The court may

7   exercise its discretion in deciding which prong to address first, in light of the particular

8   circumstances of each case.  Id.

9         A defendant must show that a reasonable officer could have believed that the conduct

10  was lawful in light of clearly established law and the information the officer possessed.  Galvin

11  v. Hay, 374 F.3d 739, 756-67 (9th Cir. 2004).  Whether a reasonable official could have believed

12  the action taken was lawful is a mixed question of law and fact: "It involves an objective test of

13  whether a reasonable official could have believed that his conduct was lawful in light of what he

14  knew and the action he took."  Sinaloa Lake Owners Ass'n v. City of Simi Valley, 70 F.3d 1095,

15  1099 (9th Cir. 1995).

16        Here, there are no cases clearly on point to establish whether the proper test for plaintiff's

17  claim is one of general Fourth Amendment principles or whether the "special needs" exception

18  should apply.  While defendant argues that Kriesel and Kincade provide the proper "totality of

19  the circumstances" test, both of those cases centered around the question of whether the

20  government's requirement of collecting DNA samples from convicted felons on supervised

21  release was a reasonable search under the Fourth Amendment.  Both cases ostensibly used the

22  "totality of the circumstances" rather than the "special needs" exception.  On the other hand,

23  plaintiff here is not similarly situated – plaintiff was an arrestee and the blood sample taken from

24  plaintiff was not for the purpose of any data collection for law enforcement, but rather, for

25  medical purposes only.  Nonetheless, pursuant to the above analysis, the court has determined

26  that under both the totality of the circumstances approach and the "special needs" exception,

27  defendant did not violate the Fourth Amendment proscription against an unreasonable search.

28        Even assuming that defendant violated the Fourth Amendment, a reasonable officer could

have believed that his conduct was lawful.  Defendant knew that plaintiff was housed at NSH for the purpose of receiving forced antipsychotic medication in an attempt to render him competent to stand trial.  As a part of defendant's role as a psychiatric technician, defendant knew that patients who are medicated with Depakote should have their blood drawn in order to monitor the levels of valproic acid in their blood.  Defendant knew that if the levels are too high, it could be dangerous to plaintiff's health.  However, if the levels are not high enough, the medication would be ineffective.  A reasonable officer could have believed that drawing plaintiff's blood against plaintiff's consent to ensure plaintiff's safety would be lawful.

Accordingly, defendant is entitled to qualified immunity.

**CONCLUSION**

Defendant's motion to for summary judgment is GRANTED.  The clerk shall terminate any pending motions and close the file.

IT IS SO ORDERED.

DATED: _____

RONALD M. WHYTE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


ALLEN STERNI,

                Plaintiff,

   v.

UNIT SUPERVISOR LEPAGE,

                Defendant.
_____/

Case Number: CV12-05145 RMW

**CERTIFICATE OF SERVICE**


I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 24, 2014, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Michael Allen Sterni AL-7692
A1-42
MCCF
Post Office Box 970
Adelanto, CA 92301

Dated: September 24, 2014

                                Richard W. Wieking, Clerk
                                By: Jackie Lynn Garcia, Deputy Clerk